MR. JUSTICE WEBER
specially concurring:
I commend the majority for a well analyzed and well written opinion. Based on previous case law, the majority has properly struck a balance. Unfortunately, we have been unable to address the fundamental issue of fairness in the present case.
Here we have double taxation. After the completion of the pipeline, the State levied its property tax of approximately $33,000 for each mile of pipeline on the reservation. Essentially the State levied the same tax as would have been levied if the pipeline were located off the reservation in the State of Montana. Northern Border did not protest such a tax as it apparently concluded that a single tax of that nature was appropriate. After several years, the Tribes became aware of an opportunity to levy a similar property tax for their own direct use and benefit. Such a Tribal tax was appropriate because the pipeline was located on the reservation land. The Tribes then imposed their own property tax of approximately $33,000 per mile for each mile of pipeline on the reservation, resulting in an additional annual tax to Northern Border of approximately $1 million each year. Had Northern Border constructed its pipeline south of the reservation, there would only have been a single tax. Now *132 Northern Border is trapped with a double tax resulting from the taxing ingenuity of two independent taxing entities. Northern Border properly feels it should have a judicial forum where this unfairness can be reviewed.
Unfortunately our state judicial system is unable to address that issue of fairness. Our jurisdiction does not extend to any control over the Tribal lands nor of the Tribe’s annual tax of approximately $1 million. We therefore cannot consider the tax of both the State and the Tribes. We can only state that the Montana tax is appropriate. Where does that leave Northern Border?
As a result of this opinion, Northern Border cannot obtain consideration of the issue in our State judicial system. Can Northern Border next go to the federal court system? Clearly the answer again is, “No.” If Northern Border proceeds in federal court, that court system would undoubtedly agree that it has the authority to consider the tax by the Tribes only, but that it cannot consider the tax imposed by the State of Montana. The result again would be that the double tax could not be considered. Clearly this is unfair to the taxpayer.
Northern Border argues that the double tax will adversely effect the economic development of the reservation. The State argues that the issue cannot be presented by Northern Border as a taxpayer because this is a matter which can be presented only by the Tribes who are not parties to the action. It appears that the majority is correct in not addressing the issue as to the adverse effect on the economic development of the reservation. Again there is an element of unfairness.
Without question there will be an impact on the reservations of Montana in the future. Economic development on the Indian reservations will be reduced. Non-Indians, whether corporate or individual, will not construct taxable property on an Indian reservation if it is possible to place that property outside a reservation boundary. The message to the business community is to avoid transactions on the reservations which may be subject to such a double tax. Tragically the result will be a greater separation of the Indian reservations from the remainder of the State of Montana.
Montana lacks the power to address all aspects of this dilemma. It becomes one more unfortunate aspect of the Indian problem which remains to be addressed by the Congress of the United States.
I concur in the majority opinion. Yet I also conclude that justice has been denied.